Christopher J. Reichman  SBN 250485
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorney for Plaintiff
PAUL SAPAN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| PAUL SAPAN,<br><br>          Plaintiff,<br>     vs.<br><br>DIRECT DIABETIC SOURCE, INC., a Florida Corporation, STEPHEN M. KRAUSE, an individual,<br><br>          Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, INCLUDING PUNITIVE DAMAGES, INTEREST AND ATTORNEY'S FEES, AND FOR INJUNCTIVE RELIEF**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991 Trespass to Chattel Unfair Business Practices** |

        COMES NOW Plaintiff PAUL SAPAN (hereinafter referred to as

"Plaintiff") who alleges as follows:

/ / /

/ / /

- 1 -
Complaint

## JURISDICTIONAL ALLEGATIONS

1.     Plaintiff is, and at all times herein mentioned was, a resident of Los Angeles, but has recently moved to the County of Orange, State of California.

2.     Defendant DIRECT DIABETIC SOURCE, INC. ("Direct Diabetic Source") is, and at all times herein mentioned was, a Florida corporation, doing business in the County of Los Angeles, State of California.

3.     Defendant STEPHEN M. KRAUSE is, and at all times herein mentioned was, an individual doing business in the County of Los Angeles, State of California.

4.     This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq.  The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441.  *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012).  The state law claim herein arises out of a common nucleus of operative facts and is subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5.     At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

Complaint

# **FACTUAL SUMMARY**

6.      Defendants made eighteen (18) live calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch their diabetes testing equipment on the following dates and times and using the following Caller ID ("CID") numbers and Caller ID name ("CNAM"):

- February 11, 2013 at 9:16 am CID 260-436-4911
- February 11, 2013 at 1:45 pm CID 260-436-4911
- February 12, 2013 at 9:25 am CID 260-436-4911
- February 12, 2013 at 1:59 pm CID 260-436-4911
- February 13, 2013 at 8:13 am CID 260-436-4911
- February 21, 2013 at 9:42 am CID 312-499-3156
- February 21, 2013 at 11:01 am CID 312-499-3156
- February 21, 2013 at 12:06 pm CID 312-499-3156
- March 4, 2013 at 10:52 am CID 586-582-0685
- March 4, 2013 at 10:52 am CID 586-582-0685
- March 11, 2013 at 8:27 am CID 212-281-1945
- March 11, 2013 at 12:39 pm CID 212-281-1945
- March 12, 2013 at 8:13 am CID 212-281-1945
- March 12, 2013 at 12:31 pm CID 212-281-1945
- March 13, 2013 at 12:57 pm CID 458-201-0366
- March 13, 2013 at 1:30 pm CID 458-201-0366
- March 14, 2013 at 10:14 am CID 254-773-6913
- March 15, 2013 at 8:53 am CID 212-281-1945

7.      Mr. Sapan's home phone has been listed on the federal "Do Not Call" registry maintained by the Federal Trade Commission from August 9, 2008 to the present.

/ / /

/ / /

Complaint

8.      While each of the calls complained of above used the Caller ID number, they did not transmit Caller ID name information as required by law. 47 C.F.R. § 64.1601(e).

9.      As detailed above, Defendants called Mr. Sapan's home phone number twice on February 11, 2013, twice on February 12, 2013, and once on February 12, 2013 using the CID 260-436-4911 each time.

10.     Mr. Sapan did not answer any of these calls.

11.     Mr. Sapan performed a Google search on the CID 260-436-4911 and found multiple complaints online about junk telemarketing calls trying to sell diabetes testing equipment and supplies and making initial come-on offers of sending "free" samples which would in fact be paid for by Medicare.

12.     One of these complaints about junk calls was on the Better Business Bureau's online listing for Defendant Direct Diabetic Source.

13.     Plaintiff pleads on information and belief that all of the calls made to his home phone from CID 260-436-4911 were made by Defendants for the purpose of trying to sell him diabetes testing equipment and supplies.

14.     Defendants called Mr. Sapan's home phone number three times on February 21, 2013 using the CID 312-499-3156 each time.

/ / /

/ / /

Complaint

15.     Mr. Sapan did not answer the first or last calls, but he did answer the middle call at 11:01am and a live person who claimed he was "Tim" from "US Diabetes" immediately tried to sell diabetes testing equipment and supplies.

16.     "Tim" from "US Diabetes" also said he wanted Mr. Sapan's Medicare number so they could send Mr. Sapan some free sample diabetic testing supplies.

17.     Mr. Sapan asked for some more information about the company and was told that they were located in Sunrise, Florida.

18.     Shortly after the call, Mr. Sapan performed a Google search on "US Diabetes Sunrise, FL" and it again listed the Better Business Bureau's ("BBB") online listing for Defendant Direct Diabetic Source on the first page.

19.     At the time of the calls, the BBB's listing gave Direct Diabetic Source an "F" rating, due in no small part to ten or more complaints about junk telemarketing calls.

20.     Searching "Direct Diabetic Source" also uncovered that only one year before the calls to Mr. Sapan, the Mississippi Public Service Commission ("PSC") had charged Defendant Direct Diabetic Source with making illegal phone calls to people on the Do Not Call list and violating other state telesolicitation regulations, charges which the company settled.  See, http://www.psc.state.ms.us/commissioners/southern/press%20releases/2012/Bentz

%20Announces%20$125,000%20in%20More%20Fines%20and%20Settlements%20for%20No-Call%20Violations,%20Other%20Failures%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.pdf.

21.     Mr. Sapan searched the Florida Department of State Division of Corporations online database of all registered business entities and trade names for "US Diabetes" and found no such entity or trade name, nor anything even close.

22.     Plaintiff pleads on information and belief that "US Diabetes" is a completely false generic-sounding name that was used by Direct Diabetes Source personnel when making sales calls to try to evade detection by utility commissions like the Mississippi PSC and privacy advocate litigants like Mr. Sapan.

23.     Mr. Sapan did not answer two of the three calls from CID 312-499-3156, but pleads on information and belief Defendants made both the unanswered calls to try to sell their diabetes testing equipment and supplies services since the CID matches the call he did answer.

24.     Defendants called Mr. Sapan's home phone number twice within the same minute on March 4, 2013 using the CID 586-582-0685 each time.

25.     Mr. Sapan did not answer the first call, but he did answer the second call (at 10:52am) and a live person who claimed he was "John" from "US Diabetes" immediately tried to sell diabetes testing equipment and supplies.

26.     "John" from "US Diabetes" said he wanted Mr. Sapan's Medicare number so they could send Mr. Sapan some free samples like "Tim" had before.

- 6 -

Complaint

27.     Mr. Sapan asked for some more information about the company and was told that they were located in Sunrise, Florida.

28.     Since Mr. Sapan now knew this was just a false name for Defendants, he said he wasn't interested and asked not to be called again before he hung up to avoid wasting any more of his time on these illegal calls.

29.     Mr. Sapan did not answer the first call from CID 586-582-0685, but pleads on information and belief Defendants made the unanswered call to try to sell their diabetes testing equipment and supplies services since the CID matches the call he did answer.

30.     Defendants called Mr. Sapan's home phone number twice on March 11, 2013, twice on March 12, 2013 using the CID 212-281-1945 each time.

31.     Mr. Sapan did not answer the first three calls using this CID, but he did answer the last call on March 12, 2013 at 12:31pm and a live person who claimed he was "Lee" from "Medicare" immediately tried to sell diabetes testing equipment and supplies.

32.     Mr. Sapan had heard the same scripted pitch as in the previous calls but was incredulous that telemarketers would actually say they were from Medicare and wanted to investigate to be sure it was the same people.

/ / /

/ / /

- 7 -

Complaint

33.     When Mr. Sapan pressed for more information, "Lee" from "Medicare" changed his story and said he was with "US Diabetes in Sunrise, Florida".

34.     Since Mr. Sapan now knew this was just a false name for Defendants, he again stated that he did not wish to be called anymore and hung up to avoid wasting any more of his time on these illegal calls.

35.     Mr. Sapan did not answer the first three calls from CID 212-281-1945, but pleads on information and belief Defendants made the unanswered calls to try to sell their diabetes testing equipment and supplies services since the CID matches the call he did answer.

36.     Defendants called Mr. Sapan's home phone number twice on March 13, 2013 using the CID 458-201-0366 each time.

37.     Mr. Sapan did not answer the first call using this CID, but he did answer the second call at 1:30pm and a live person who claimed he was "John" from "Medicare" immediately tried to sell diabetes testing equipment and supplies.

38.     Since Mr. Sapan now knew this was just a false name for Defendants, he again stated that he did not wish to be called anymore and hung up to avoid wasting any more of his time on these illegal calls.

39.     Mr. Sapan did not answer the first call from CID 458-201-0366, but pleads on information and belief Defendants made the unanswered call to try to

Complaint

sell their diabetes testing equipment and supplies services since the CID matches the call he did answer.

40.    Defendants called Mr. Sapan's home phone number once each on March 14 and March 15, 2013 using the CID 458-201-0366 each time.

41.    Mr. Sapan did not answer the first call using this CID, but he did answer the second call on March 15, 2013 at 8:53am and a live person who claimed he was "John" from "Medicare" immediately tried to sell diabetes testing equipment and supplies.

42.    Since Mr. Sapan now knew this was just a false name for Defendants, he again stated that he did not wish to be called anymore and hung up to avoid wasting any more of his time on these illegal calls.

43.    Mr. Sapan did not answer the first call from CID 458-201-0366, but pleads on information and belief Defendants made the unanswered call to try to sell their diabetes testing equipment and supplies services since the CID matches the call he did answer.

## **Liability of Direct Diabetes Source, Inc.**

44.    As alleged above, the Direct Diabetes Source personnel did self-identify their location as Sunrise, Florida consistently in each call, even while using different false names.

Complaint

45.     Every online search of free public documents showed Direct Diabetes Source as being located in Sunrise, Florida and having a host of complaints about junk telemarketing calls that followed the same pattern and script as the calls to Mr. Sapan.

46.     And as alleged above, the calls went so far that Direct Diabetes Source was chared by the Mississippi PSC with illegal telemarketing into that state for their violations of the Do Not Call list, the same as is alleged in the instant case.

47.     Plaintiff alleges that Direct Diabetes Source made all the calls complained of herein which he answered for the purpose of trying to sell him diabetes testing equipment and supplies, and Plaintiff alleges on information and belief that Direct Diabetes Source made all the calls complained of herein which he did not answer for the purpose of trying to sell him diabetes testing equipment and supplies.

## Liability of Stephen M. Krause

48.     Defendant Stephen M. Krause is, and at all times herein mentioned was, the owner of Defendant Direct Diabetes Source.

49.     Defendant Stephen M. Krause is, and at all times herein mentioned was, the only person listed as an officer or manager at Defendant Direct Diabetes Source in any public document freely available from the State of Florida and the

only one listed in common online business registries like the Better Business Bureau.

50.     Plaintiff has searched public records such as federal employer Identification Number registries and can find no record that Direct Diabetes Source ever employed anyone directly, nor any evidence that anyone other than Stephen M. Krause ever worked for Direct Diabetes Source.

51.     Plaintiff alleges on information and belief that Defendant Stephen M. Krause made the violative calls, ordered them made, knew the calls described above were being made and did nothing, or was willfully and recklessly ignorant of the fact his company was making the calls described above.

## Actual Harm & Willful and Knowing Conduct

52.     Mr. Sapan is angered and annoyed by these junk calls and has been harmed by the waste of his time during the calls themselves, the waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and intrusion on his privacy of having to listen to the insistent metallic jangling of a phone ringing in his home whether he answered a particular call or not.

Complaint

53.     As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 20% of his monthly phone bills in February and March of 2013 since Defendants calls constituted 20% or more of the total calls to his phone during their junk calling campaign.

54.     Plaintiff alleges on information and belief that Defendants made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

55.     Plaintiff alleges on information and belief that Defendants made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

56.     Mr. Sapan has been harmed by the junk calls complained of herein by the direct waste of his time during the calls themselves, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.


**FIRST CAUSE OF ACTION**
[TCPA Violation – Do Not Call List – For All 18 Calls]

57.  Plaintiff realleges all paragraphs above and incorporates them herein by reference.

Complaint

58.   Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

59.   Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations".

60.   At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

61.   Defendants have called Plaintiff's residential telephone line for solicitation purposes during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658.  These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line.  These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff.  37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

Complaint

62.  Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the national do-not-call registry rules promulgated thereunder.  Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both.  If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

## SECOND CAUSE OF ACTION
[Trespass to Chattel – For All 18 Calls]

63.  Plaintiff realleges all paragraphs above and incorporates them herein by reference.

64.  The conduct by defendants complained of herein, namely illegally calling Plaintiff's phone, constitutes an electronic trespass to chattel.

65.  At no time did Plaintiff consent to this trespass.

66.  As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 20% of his monthly phone bills in February and March of 2013 since Defendants calls constituted 20% or more of the total calls to his phone in the two months at the height of their junk calling campaign.

67.  In making the illegal calls described above, defendants were guilty of oppression and malice, in that defendants made said calls with the intent to vex,

injure, or annoy Plaintiff or with a willful and conscious disregard of Plaintiff's rights. Plaintiff therefore seeks an award of punitive damages.

## THIRD CAUSE OF ACTION
[Engaging in Unfair Business Practices – For All 18 Calls]

68.   Plaintiff realleges all paragraphs above and incorporates them herein by reference.

69.   Because these telephone calls violate federal statutes, they are unlawful business practices within the meaning of section 17200 of the Business and Professions Code.

70.   As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 20% of his monthly phone bills in February and March of 2013 since Defendants calls constituted 20% or more of the total calls to his phone in the two months at the height of their junk calling campaign.

71.   Section 17203 of the Business and Professions Code entitles Plaintiff to an injunction enjoining defendants from engaging in unfair or unlawful business practices.

WHEREFORE Plaintiff prays for judgment against defendants, and each of them, as follows:

Complaint

On the FIRST CAUSE OF ACTION:

1.  For an award of $500.00 for each violation of 47 C.F.R. §64.1200 (c) (2);

2.  For an award of $1,500.00 for each such violation found to have been willful;

On the SECOND CAUSE OF ACTION:

3.  For compensatory damages according to proof;

4.  For punitive damages;

On the THIRD CAUSE OF ACTION:

5.  For preliminary and permanent injunctions, enjoining Defendants, and each of them, from engaging in unfair or unlawful business practices pursuant to section 17203 of the Business and Professions Code;

On ALL CAUSES OF ACTION:

6.  For attorney's fees pursuant to California Code of Civil Procedure § 1021.5.

7.  For costs of suit herein incurred; and

8.  For such further relief as the Court deems proper.


DATED: July 18, 2016                    **PRATO & REICHMAN, APC**


_/s/Christopher J. Reichman, Esq._
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff
PAUL SAPAN

Complaint